PLEASURE DRIVEWAY AND PARK DISTRICT OF PEORIA, Plaintiff-Appellant, *v.* WILLIAM KUREK *et al.*, Defendants-Appellees.

(No. 74-127;

Third District—March 27, 1975.

William Frederick and Julian Cannell, both of Kavanagh, Scully, Sudow, White, & Frederick, of Peoria, for appellant.

John E. Cassidy, Jr., of Peoria, for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The Peoria Park District (plaintiff) brought a forcible entry and detainer action against five golf professionals (defendants) for possession of the golf concession shops at the five public golf courses owned by plaintiff. Defendants filed an amended answer, affirmative defense and counterclaim. Following a 3-week jury trial, a verdict and judgment were entered on April 23, 1974, in favor of defendants. Plaintiff's post-trial motion was denied, and on May 6, 1974, a judgment order was entered which gave defendants' possession of the premises and granted additional injunctive relief to defendants to enforce their employment and concession contracts. Plaintiff appeals from the judgment orders entered on April 23 and May 6, and from the order denying their post-trial motion.

The dispute which gave rise to this litigation originated in negotiations for concession agreements for the year 1973 between the Peoria Park District and the golf pros who operate the pro shops and who were employed as greenskeepers at the five golf courses owned by the Park District. It is not disputed that since 1959 the concession agreements had

provided for a 1-year term ending December 31 of each year with a fixed fee or rent paid to the park district.[1]

During 1972 the Park Board proposed that the rental fee for 1973 be changed to 1½% of gross receipts. After prolonged discussions failed to produce an agreement, the golf pros retained an attorney in July of 1973 and authorized him to negotiate contracts in their behalf.

During further negotiations the Park Board refused to accept a rental fee of 5% of net income, but finally, on September 12, 1973, offered to accept 1½% of gross receipts for 1973 and 1974 on the condition that the contracts were signed and returned by September 20. Later the deadline was extended to 4:30 P.M. October 2. The golf pros signed contracts on October 1, 1973, with four of the contracts providing for a term from January 1, 1973, to December 31, 1974, and gave the contracts to their attorney who did not deliver them.[2] On October 3, notices of termination of the concession contracts effective December 31, 1973, were given to four of the golf pros. At an October 10 meeting, the Park Board voted to refuse the 2-year contracts and to accept 1-year contracts at 1½% of gross receipts, provided the signed contracts were delivered the next day. On October 11 the attorney for the golf pros approved the change in the termination date to December 31, 1973, in the four contracts in his possession and delivered them to the Park Board. The agreements were signed on behalf of the Park Board the same day.

In November of 1973 negotiations commenced between the Park Board and the golf pros for the 1974 contracts, and the Park Board also prepared bid specifications for concession rights for 1974. Having failed to reach agreement with the defendants, the Park Board on January 19, 1974, awarded a 3-year contract for concession rights to Golf Shop Management, Inc. (GSM), with the stated intention of continuing defendants' employment as greenskeepers. On January 21, 1974, each of the five golf pros were served with a 30-day notice to terminate tenancy of the premises occupied by the concession shops, and on February 20, 1974, the Park District filed its complaint in this cause to recover possession of the five golf pro shops at its golf courses.[3] On the

---

[1] For 1972, the annual rental fee paid by four of the defendants was $600 each and by one defendant, $300.

[2] One defendant, Kurek, personally returned his contract to the Park Board on October 2. This contract was originally drawn with a December 31, 1973, expiration date.

[3] On January 22, 1974, the five golf pros filed suit in the United States District Court for the Southern District of Illinois, Northern Division, seeking declaratory and injunctive relief for alleged deprivation of property without due process of law or just compensation, and for an alleged violation of Federal antitrust laws. The complaint was dismissed with prejudice, and, on appeal, the dismissal was affirmed but the case was remanded for consideration of the golf pros' motion to open, alter or amend judgment, which motion is still pending.

same date the Park Board terminated the employment of the golf pros as greenskeepers.

The record of the proceedings in the circuit court is replete with motions, orders and pleadings, and no useful purpose would be served by attempting to summarize all of the various pretrial procedures and rulings in this case. Included among the rulings of the circuit court were a denial of plaintiff's motion for summary judgment, dismissal of defendants' third-party complaint against GSM, severance of defendants' original counterclaim for purposes of trial, and denial of plaintiff's motion to dismiss defendants' amended affirmative defenses and counterclaim.[4]

The complaint sought to recover possession of the pro shops on the ground that the leases expired December 31, 1973. The defendants in their answer denied the expiration date and also denied that the concession agreements were the sole basis of possession, and, in their counterclaim, asserted that their employment as greenskeepers was so interrelated with the concession agreements as to form one contract; that the discharge of defendants from their employment on February 20, 1974, amounted to forcible entry upon defendants' possessory rights; and that erecting tents on the five golf courses trespassed on defendants' possessory rights (apparently the plaintiff erected tents for use by GSM for selling admissions and renting golf carts during 1974). Defendants' counterclaim also alleged that certain other acts of plaintiff, such as issuing press releases, constituted forcible entry, but such assertions were so obviously frivolous that we will not consider them here.

The cause proceeded to trial before a jury which returned a verdict for defendants on both the complaint and counterclaim and also returned the following answers to special interrogatories:

> "Do you find that the Plaintiff entered upon defendants' premises with force and thereby interfered with their rights of possession? Answer . . . Yes.
>
> * * *
>
> Do you find that the Plaintiff and Defendants entered into an agreement which expired or terminated December 31, 1973? Answer . . . No."

Plaintiff's post-trial motion was denied, and on May 6, 1974, the court entered an order which granted defendants· possession of the golf pro shops, enjoined plaintiff from interfering with operation of the golf courses, restored defendants to their employment as greenskeepers, granted defendants exclusive operation of the pro shops and golf courses, enjoined plaintiff from spending any funds for pro shop or golf course

---

[4] Affirmative defenses filed by defendants were withdrawn at the close of all the evidence.

concessions other than for or on behalf of defendants, and ordered plaintiff to pay defendants' wages and other benefits from and after February 20, 1974, in the amounts appropriated for 1974.

On appeal plaintiff's chief contentions are (1) that the trial court erred in denying its motion for summary judgment and its motions for directed verdict and for judgment *n.o.v.*; (2) that the trial court did not have jurisdiction to grant injunctive and mandatory relief in its May 6 order; (3) that plaintiff was deprived of a fair trial because of improper conduct of defense counsel and the court's erroneous rulings on evidence and instructions.

Although the parties have asserted numerous issues in this appeal, we believe the determinative question is whether defendants' employment as greenskeepers was such an integral part of the concession agreements that it could be introduced to show a defense germane to the question of right to possession.

For many years equitable defenses to forcible entry and detainer actions were not permitted. After the fusion of practice and procedure in cases at law and in equity accomplished by the Civil Practice Act, equitable defenses were permitted but an amendment to section 5 of "An Act in regard to forcible entry and detainer" (Ill. Rev. Stat., ch. 57, par. 5) limited such defenses, as follows:

> "No matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise: * * *."

■■ In a 1970 decision, the Supreme Court of Illinois broadened the concept of "germane matters" to permit the validity and enforcibility of installment contracts for the purchase of realty to be raised as a defense in a forcible entry and detainer action. In *Rosewood Corp. v. Fisher*, 46 Ill.2d 249, 263 N.E.2d 833, 837 (1970), the court quoted with approval from *Bleck v. Cosgrove*, 32 Ill.App.2d 267, 272, 177 N.E.2d 647, 649 (2d Dist. 1961), where the purpose of forcible entry and detainer was stated to be "a summary statutory proceeding to adjudicate rights to possession * * * unhampered and unimpeded by questions of title and other collateral matters not directly connected with the question of possession." In *Rosewood*, it was alleged by defendants, that the payment and forfeiture provisions of the purchase contracts upon which they had defaulted were invalid and unenforcible and in violation of the constitutionally guaranteed civil rights of defendants. The trial court refused to permit the defenses, and on direct appeal, the supreme court reversed.

The problem of giving effect to the statutory requirement that defenses be germane to the question of possession while permitting de-

fenses within the principles announced·in the *Rosewood* decision has been troublesome. In its most recent decision, the supreme court noted:

> "Only matters germane to the distinctive purpose of forcible entry and detainer proceedings may be introduced. [Citations.] That purpose is to adjudicate rights of possession, and only matters germane to those rights are properly pleaded or considered. In the recent cases of *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, and *Peoria Housing Authority v. Sanders*, 54 Ill.2d 478, landlords sought possession in forcible entry and detainer actions because tenants had failed to pay rent. We there held that the questions whether the defendants in fact owed rent in view· of alleged breaches of an express covenant to repair, a breach of implied warranty, and an unconstitutional rental policy, were germane."

(*Clore v. Fredman*, 59 Ill.2d 20, 25-26, 319 N.E.2d 18, 21 (1974).) In *Clore*, the court then held that defendants' answer, which alleged that suit was brought in retaliation for complaints by the tenant to governmental authorities was germane to the action and stated a defense, particularly since specific statutory and ordinance provisions forbidding retaliatory eviction were allegedly violated.

In another recent decision, the court noted that the·cases broadening the scope of available defenses have arisen where questions of rent are ·involved, or where, as in·*Rosewood*, the invalidity of the purchase contract upon which the ·action was based was offered as a defense. (*Germania Federal Saving & Loan Ass'n v. Jacoby*, 23 Ill.App.3d 145, 318 N.E.2d 734 (5th Dist. 1974).) The court then affirmed the ruling of the trial court that, where rent was not an issue, defendant ·could not raise objections about the condition of the premises for the first time after the forcible entry and detainer action was commenced.

In *Bleck v. Cosgrove* a question similar to the one before us was raised. In a forcible entry and detainer action; the trial court had entered judgment on the pleadings for possession and rent in favor of the plaintiff, who was the court-appointed receiver of a country club, and against ·defendant as a tenant of that club. Defendant was a shareholder of the club, and attempted to defend the forcible entry and detainer action on numerous grounds, including the invalidity of the previous foreclosure proceedings to which he was not a party. On appeal, the court ruled that the interests of defendant as shareholder and as tenant embrace separate legal concepts and that in a forcible entry and detainer proceeding he is limited to an assertion of his rights as tenant.

In the case before us, the defenses asserted by defendants go beyond any of the matters previously held to be germane. The pleadings of the defendants consisted of their amended answer and counterclaim. Al-

though the answer denied the 1973 expiration date of the concession agreements, the defendants, in their testimony at trial, admitted that they signed the agreements and that they authorized the change of termination date to December 31, 1973. Thus there was no factual dispute as to the existence and provisions of the written contracts. The only controversy remaining to be resolved from the complaint and amended answer was a question of law: Did the expiration of the contracts on December 31, 1973, terminate defendants' right to possession of the pro shop premises as lessees? Where the terms of a contract have been specifically determined, then the legal effect of such contract presents a pure question of law, and the court alone is permitted to construe it. *St. Louis National Stock Yards v. Wiggins Ferry Co.*, 102 Ill. 514 (1882).

■■ We are persuaded that, as a matter of law, the defendants' rights to possession of the pro shops under the concession contracts ended on December 31, 1973. Plaintiff admits that the golf pros had a dual relationship with the Park Board in that they were also employed as greenskeepers, but contends that the employer-employee relationship was not a part of the concession agreements. The concession contracts made no reference to this employment, and defendants have made no claim that the parties at any time expressly agreed that their employment and concessions were mutually dependent. It is admitted that the employment continued until February 20, 1974, when terminated by action of the Park Board. Therefore, we hold that defendants' employment as greenskeepers was not germane to the question of their right to possession of the pro shops, but instead was a separate contractual relationship.

Defendants also filed an amended counterclaim (which was in the form of an answer) alleging that plaintiff was barred from asserting any right to possession by its forcible entry in violation of defendants' rights thereto, and that the unlawful entry was accomplished by termination of defendants' employment as greenskeepers and the erection of tents on the golf courses for use by GSM, the successor concessionnaires. None of the acts complained of involved a physical entry on the pro shop premises but at most diminished defendants' income, which defendants claim amounted to a constructive entry. Having determined that the possessory rights of defendants ended on December 31, 1973, it is obvious that the events complained of in the counterclaim, all of which occurred in 1974, are not germane to this action.

Defendants have contended before this court: "If the totality of defendants' judicially decided rights can be arbitrarily denied under the guise of irrelevant and immaterial remedial labels and false lease claims,

then the Forcible Entry and Detainer Act and these judicial proceedings are repugnant to the 1st and 14th Amendments to the federal constitution and sections 2, 5, 12, and 13 of Article I of the Constitution of Illinois." As we understand it, defendants are saying that a ruling against defendants by this court would demonstrate the unconstitutionality of the Forcible Entry and Detainer Act. The statute in question has previously been held to provide procedural due process by allowing certain germane equitable defenses to be considered. (*Johnson v. Illinois Department of Public Aid*, 467 F.2d 1269 (7th Cir. 1972).) Defendants here have had ample opportunity to plead any germane defense that might be available to them, and have offered none. The fact that they were unable to agree to terms for a renewal of their concession contracts with the Park District obviously results in an economic hardship to them, but one that is part of the usual course of business practice, and such hardship is not to be confused with a denial of constitutional rights.

■■ Plaintiff has contended on appeal that the trial court erroneously denied its motion for summary judgment. While this may be so, the rule is well established that, after an evidentiary trial, a previous order denying a motion for summary judgment is not reviewable on appeal, and the result of such denial becomes merged in the subsequent trial. *Mercer v. Sturm*, 10 Ill.App.3d 65, 293 N.E.2d 457 (3d Dist. 1973).

■■ Since we have found that the matters germane to this controversy do not present disputed issues of fact to be submitted to a jury, we hold that the trial court erred in not directing a verdict for plaintiff and in refusing to dismiss the counterclaim. Plaintiff's right to possession of its premises at the termination of defendants' leases on December 31, 1973, is clearly established as a matter of law, and all matters pleaded and argued by defendants in their counterclaim were not germane to this proceeding. It is not necessary to consider the other errors asserted by plaintiff. We therefore reverse the verdict and judgment thereon and order that judgment be entered here for plaintiff on the complaint and that the counterclaim be dismissed.

In addition to the appeal from the proceedings in the trial court, a number of other related matters are before this court. On June 28, 1974, we ordered a temporary writ of prohibition to issue to stay all proceedings of a substantive nature pending in the Circuit Court of Peoria County until final disposition of this appeal, and the writ of prohibition was made permanent on July 26, 1974. The effect of this writ was to stay enforcement of the injunctive relief ordered by the trial court on May 6 and to vacate a temporary restraining order entered by the trial court on June 26.

On December 18, 1974, plaintiff filed a motion for writ of restitution

with this court, requesting that a writ issue to restore plaintiff to possession of the pro shop premises after December 31, 1974. Defendants then filed a motion purportedly for protective orders which seemed merely to request an extension of time for filing of briefs and motions in response to the motion for writ of restitution. Additional time was granted, and defendants thereafter filed a motion to strike plaintiff's motion, together with an answer and jury demand. Plaintiff has also filed objections to defendants' motion for protective orders. All of these matters were taken with the appeal for decision by this court.

In its motion for writ of restitution, plaintiff asserts that the isssues raised by this appeal are now moot because defendants were entitled to possession either until December 31, 1973, or until December 31, 1974, and thus, regardless of the outcome of this appeal, defendants' claim has now expired. It is correct that an appellate court will not review a case merely to decide abstract questions where the issues involved in the trial court no longer exist and where there is no overriding public interest. (*Sullivan v. Sheehan,* 20 Ill.App.2d 380, 156 N.E.2d 374 (1st Dist. 1959).) However, at oral argument and in their pleadings in response to plaintiff's motion, defendants have rejected the suggestion that their right to possession has now expired. Thus the issue of possession is clearly not moot.

Persuasive reasons for issuance of a writ of restitution by this court in the event of reversal on appeal were presented by plaintiff at oral argument. Defendants continue in possession of the pro shops under section 23 of "An Act in regard to forcible entry and detainer" (Ill. Rev. Stat., ch. 57, par. 22) during the pendency of this appeal. Having reversed the trial court and ordered judgment entered for plaintiff, we believe justice requires that plaintiff be promptly restored to possession. Like the court in *Bleck v. Cosgrove,* we feel that "[t]he facts disclosed by this record are insufficient to breathe new life into [defendants'] right to continue possession or to furnish the seed bed for the birth of a new lease. [Their] right to possession having expired, its prompt interment ought not be longer delayed. While this suit has not followed the course of the normal forcible entry and detainer suit, it has reached its proper port * * *." 32 Ill.App.2d 267, 279, 177 N.E.2d 647, 652.

Article VI, section 6, of the Illinois Constitution of 1970 provides: "The Appellate Court may exercise original jurisdiction when necessary to the complete determination of any case on review." In addition, section 11 of "An Act to establish appellate courts" (Ill. Rev. Stat., ch. 37, par. 35) authorizes appellate courts to issue writs "* * * which may be necessary to enforce the due administration of justice in all matters

within their jurisdiction." A writ of restitution may be issued by an appellate court to restore possession of disputed premises to those entitled to them. *Theus v. Young*, 321 Ill.App. 367, 53 N.E.2d 298 (1st Dist. 1944).

■■ We therefore deny defendants' motion for protective orders, deny defendants' motion to strike plaintiff's motion for writ of restitution, overrule defendants' responsive answer to plaintiff's motion, and strike defendants' demand for an appellate court jury. We direct that the clerk of this court issue a writ of restitution directed to the sheriff of Peoria County for execution in favor of the Peoria Park District, and against the defendants for possession of the golf concession shops situated at plaintiff's five golf courses in Peoria, Illinois.

Judgment for defendant reversed; judgment for possession entered for plaintiff with writ of restitution to issue.

STOUDER and SCOTT, JJ., concur.