PLEASURE DRIVEWAY AND PARK DISTRICT OF PEORIA, Plaintiff-Appellee, *v.* EDWIN JONES *et al.*, Defendants-Appellants.

Third District   No. 76-14

Opinion filed July 18, 1977.—Rehearing denied September 7, 1977.

John E. Cassidy, Jr., of Peoria, for appellants.

Julian Cannell, of Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Pleasure Driveway and Park District of Peoria brought this action against five golf pros to recover damages occasioned by the defendants' wrongful holdover of the golf concession pro shops at five public fee golf courses owned by the plaintiff. Defendants counterclaimed, alleging wrongful termination of their employment as greenskeepers on each of the five courses. Following a bench trial, the court entered a joint and several judgment against the golf pros in the amount of $127,605 and found for the plaintiff on defendants' counterclaim. This appeal ensued.

Only a brief summary of the events and facts preceding commencement of this action is necessary to a determination of the issues properly presented here. This litigation relates to a controversy previously before this court in *Pleasure Driveway & Park District v. Kurek*, 27 Ill. App. 3d 60, 325 N.E.2d 650, and the opinion in that case should be consulted for a more complete account of the facts.

Previous to 1974, defendants were employed by plaintiff as greenskeepers at plaintiff's five courses and were also concessionaires of the pro shops on those courses for which they paid an annual fee or rent to the Park District. From 1972 until October 1973, negotiations were conducted between the plaintiff and defendants concerning the rental fee for the pro shops and which resulted in a contract between the parties for the year 1973. Subsequent negotiations failed to produce a contract for 1974 and on January 19, 1974, the Park District awarded a three-year contract for the pro shops to Golf Shops Management, Inc. (GSM), with

the stated intention of continuing defendants' employment as greenskeepers. The contract with GSM was contingent upon plaintiff obtaining control of the pro shops. On January 21, 1975, each of the five golf pros was served with a 30-day written notice to terminate the tenancy of the premises occupied by the pro shops and on February 20, 1974, the Park District filed a forcible entry and detainer action to recover possession of the five pro shops. On the same date the Park Board terminated the employment of the golf pros as greenskeepers.

After a jury trial in the forcible entry and detainer action, the court ordered the plaintiff to restore the golf pros to possession of the pro shops and reinstate them as employees. This judgment was reversed in *Pleasure Driveway & Park District v. Kurek*, 27 Ill. App. 3d 60, 325 N.E.2d 650. In that appeal this court held that the golf pros' right to possession of the pro shops ended on December 31, 1973, and that the golf pros' employment as greenskeepers was not germane to the question of their right to possession of the pro shops, but instead was a separate contractual relationship. A writ of restitution was issued by this court restoring possession to plaintiff, but was recalled upon order of the Illinois Supreme Court pending a determination of an appeal to that court. Petition for leave to appeal was denied on May 27, 1975, and a second writ of restitution issued on June 30, 1975, restoring possession of the pro shops to the park district.

The present action was filed on July 25, 1975, to recover money damages from the defendants for their wrongful possession of the pro shops from January 1, 1974, until June 30, 1975. The original complaint was amended to include a claim under section 2 of "An Act to revise the law in relation to landlord and tenant" for damages equal to double the yearly value of the land. (Ill. Rev. Stat. 1975, ch. 80, par. 2.) Defendants answered and filed six affirmative defenses which were stricken by the trial court upon plaintiff's motion. Defendants also counterclaimed, seeking restoration of their positions as greenskeepers and back pay from the date their employment was terminated. Plaintiff filed a motion for summary judgment on the issue of liability, relying on our decision in *Kurek* and the trial court granted the motion.

After a bench trial, the trial court refused to award the double damages requested by plaintiff under section 2, but did allow plaintiff damages and used the earlier contract with GSM as a measure of those damages. The court found no merit in defendants' counterclaim and entered judgment in favor of plaintiff thereon. Separate appeals were taken from the trial court's judgment by each of the defendants, but were later consolidated into the present appeal. Plaintiff filed a cross-appeal from the trial court's refusal to award double damages.

Following oral arguments and while this case was under advisement to

this court, the Circuit Court of Appeals for the Seventh Circuit rendered its opinion in *Kurek v. Pleasure Driveway & Park District* (7th Cir. 1977), 557 F.2d 580. The five golf professionals who are defendants in this action had filed a complaint in Federal court seeking money damages for an alleged violation of Federal antitrust laws by the defendants (Pleasure Driveway & Park District, the plaintiff in this cause, and other individual named defendants who are not parties to this action) and for violation of the plaintiffs (defendants herein) civil rights under 42 U.S.C. 1983 (1970). The golf professionals alleged in district court that their right to petition had been violated when their employment as greenskeepers had been terminated. We have allowed the golf professionals motion to add the opinion of the Seventh Circuit Court of Appeals as additional authority and will refer to that decision as needed.

■■ Defendants assert that the trial court committed reversible error when it dismissed the affirmative defense that *Pleasure Driveway & Park District v. Kurek*, 27 Ill. App. 3d 60, 325 N.E.2d 650, was procured by fraud and when it entered summary judgment against defendants on the issue of liability because of that decision. Of the affirmative defenses specified in defendants' answer, error is assigned on appeal only as to the affirmative defense of fraud. However, in their motion to add as additional authority the opinion of the Seventh Circuit Court of Appeals previously referred to, defendants argue that since the Seventh Circuit Court of Appeals has decided that the plaintiff may be subject to damages for antitrust violations, we should reverse the trial court's dismissal of defendants' affirmative antitrust defenses. We decline to do so. Having failed to initially allege and argue the dismissal of the antitrust defense, defendants have waived whatever assignment of error they might have to that dismissal. We therefore do not consider whether the affirmative antitrust defense alleged was meritorious.

The specific fraudulent acts alleged in the affirmative defense is that plaintiff fraudulently failed to provide a complete record on appeal in *Kurek*, and but for the omissions occurring in the record, this court would have affirmed the lower court's decision in defendants' favor. Defendants' arguments are without merit.

■■ Supreme Court Rules 322 and 329 (Ill. Rev. Stat. 1975, ch. 110A, pars. 322, 329) provide ample means to insure a true record is before the appellate court and it was defendants' responsibility to cure whatever inaccuracies, if any, that might have existed in the record. Having failed to do so, defendants cannot now claim that this court's decision in *Kurek* was procured by fraud because of alleged deficiencies in the record.

The next issue relates to the complaint. Defendants contend that the judgment of the trial court was wrong as a matter of law and present three

reasons in support of their position. We will consider each of these arguments separately.

First, defendants argue that because the amended complaint "cites section 2, chapter 80 of the Illinois Revised Statutes in support of its claim for damages," the complaint seeks relief only under that statute. Defendants contend that the trial court found that defendants did not wilfully holdover (as required by section 2) and since the complaint is based solely on that statute, plaintiff was not entitled to judgment.

■■ Upon examination of the amended complaint, it becomes evident that the defendants' view of the complaint is too narrow. We find nothing which indicates that plaintiff was requesting relief solely under section 2 to the exclusion of all other relief. To the contrary, the complaint clearly alleges that by reason of the defendants' wrongful holdover, the plaintiff has been deprived of the fair rental value of the concession shops and sustained damages because of its inability to honor contractual commitments. Hence, the claim for double rent under section 2 is merely cumulative to the plaintiff's basic claim for fair rental value and consequential damages.

■■ Next, defendants claim that plaintiff has failed to sustain its burden of proof as to damages because the trial court was unable to ascertain the exact amount of fair rental value. By so asserting, defendants suggest that the only measure of damages for wrongful holdover is fair rental value. We do not find such to be the law in Illinois. While it is generally true that fair rental value is often used as a correct measure of damages for wrongful holdover, it is by no means the only measure of damages (*Rhodes v. Sigler*, 44 Ill. App. 3d 375, 357 N.E.2d 846, *appeal denied*, 65 Ill. 2d 584; *Ash v. Barrett*, 1 Ill. App. 3d 414, 274 N.E.2d 149; see generally Annot., 32 A.L.R. 2d 582 (1953)), except when relief is awarded under section 2 (Ill. Rev. Stat. 1975, ch. 80, par. 2). Lost profits (*Rhodes v. Sigler*, 44 Ill. App. 3d 375, 357 N.E.2d 846, *appeal denied*, 65 Ill. 2d 584) and out-of-pocket expenses (*Ash v. Barrett*, 1 Ill. App. 3d 414, 274 N.E.2d 149) are properly cognizable in an action for wrongful holdover. We believe the trial court properly used as a measure of damages a single sum composed of rental value and the value of an exclusive license. The trial court properly added to this sum the plaintiff's costs of paying personnel to perform duties which GSM would have performed under the contract, costs which were reasonably foreseeable and would not have been incurred but for defendants' wrongful holdover. We find the trial court's determination of damages within the law and supported by the evidence.

■■ Defendants remaining objection relates to the joint and several nature of the judgment. The five defendants are jointly and severally

responsible for the $127,605 judgment. They contend that since each golf pro was a tenant of a particular concession shop under an individual lease agreement between the respective pro and Park District, their liability, if any, can only be several. Hence, any joint and several judgment is erroneous as a matter of law and must be reversed. We disagree.

During the period of negotiations from 1973 until the present appeal, defendants have consistently acted in concert. Through one common agent, the golf pros sought to improve the compensation they received as concessionaires of the pro shops and from their employment as greenskeepers. While this alone would not necessarily establish the joint and several character of defendants' actions, further conduct by the defendants justifies the joint and several nature of the judgment. Throughout the entire course of litigation which has spanned over three years and encompassed over 15 different judicial proceedings in both State and Federal courts, defendants have prosecuted and defended these actions jointly and severally. Only after entry of the judgment in this case did defendants file any pleadings or make any indication that they wished to be treated separately and not as a group. Having chosen to ally themselves into a single group and to prosecute and defend numerous legal actions arising out of the same fundamental dispute without once acting independently in that dispute, defendants cannot divorce themselves from their earlier conduct and elect to be treated severally. The trial court was correct in ordering a joint and several judgment.

As concerns the counterclaim, the golf pros contend that the trial court's finding that they were discharged because they refused to voluntarily vacate the pro shops establishes that defendants were penalized for exercising rights secured to them under the petition and due process clauses of the first and fourteenth amendments to the United States Constitution. Defendants claim that either their right to continue employment is protected by due process or in the alternative, that their dismissal abridged their right to petition.

In support of the contention that defendants' dismissal abridged their right to petition, defendants direct us to the Seventh Circuit Court of Appeals decision previously mentioned. (*Kurek v. Pleasure Driveway & Park District* (7th Cir. 1977), 557 F.2d 580.) The Seventh Circuit Court of Appeals held, *inter alia*, that the substance of count 2 of defendants' Federal complaint had not been previously disposed of by the judgment of the circuit court of Peoria County, contrary to what had been decided by the district court. The judgment of the circuit court of Peoria County referred to above is the same judgment which forms the basis of this appeal. Upon the motion of defendants, we have allowed the opinion of the Seventh Circuit Court of Appeals to be cited as additional authority. We have examined that opinion to determine whether the substance of

the issues presented by defendants' claimed denial of the right to petition was reached by the Seventh Circuit in their opinion. Upon an examination of that opinion, we find the only issue reached was whether Judge Iben of the circuit court of Peoria County had decided adversely to the golf pros the critical facts pertinent to the golf pros claim under 42 U.S.C. 1983 (1970). The Seventh Circuit found that Judge Iben had not disposed of the golf pros' claim or of critical facts pertinent to it and reversed and remanded the cause for further proceedings. The Seventh Circuit Court of Appeals therefore did not decide the issues raised by defendant golf pros on this appeal. From a review of defendants brief in this cause, of which the Circuit Court of Appeals was unaware, all the reasons why defendants discharge should be considered wrongful were or could have been urged and resolved in the case before the circuit court of Peoria County.

■■ While defendants claim a protectable property interest in their employment, they fail to support their conclusion by either argument or reference to facts which might indicate the existence of such an interest. In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701, after discussing cases dealing with fourteenth Amendment property interest, the court stated:

"Certain attributes of 'property' interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701.)

The court held that a nontenured professor teaching at a state university did not have an interest in continued employment which was encompassed within the fourteenth Amendment's protection of liberty and property. We find nothing in the record or in defendants brief to demonstrate why a different result should be reached here. Furthermore, while various procedures give all Park District employees the right to present grievances to the Park District, the defendants failed to avail themselves of such an opportunity.

■■ Nor can we agree with the defendants that their dismissal as greenskeepers violated their constitutional right to petition. The Forcible Entry and Detainer Act (Ill. Rev. Stat. 1975, ch. 57, par. 1 *et seq.*) gave defendants a right to remain on the leased premises while presenting their defenses to the forcible entry and detainer action which had been commenced by plaintiff, a right which the defendants utilized to stay in possession for over 18 months past the expiration of their lease. But the election to pursue a certain course of conduct guaranteed by statute or

Federal and State constitutions is not always without adverse consequences. Not only does the constitution guarantee to everyone the right to petition, it also grants employers and employees alike certain rights in deciding whether or not to associate with one another in an employment relationship. As was aptly stated in *Mitchell v. Stanolind Pipe Line Co.* (10th Cir. 1950), 184 F.2d 837, 838:

> "It is not the function of the courts in the absence of a contract to compel a person to accept or retain another in his employ, nor is it the function of courts to compel any person against his will to remain in the employ of another."

In the absence of contract or statutory provision, an employer may discharge an employee without cause or reason or for any cause or reason. (*Odell v. Humble Oil & Refining Co.* (10th Cir. 1953), 201 F.2d 123; *Mitchell v. Stanolind Pipe Line Co.* (10th Cir. 1950), 184 F.2d 837.) In *Mitchell* an employee was warned by his employer that if he brought a tort action for assault and battery against a fellow employee to recover damages, his employment would be terminated. The employee commenced the action against his fellow employee and was immediately discharged. The court rejected the employee's claim for damages based upon an alleged violation of the employee's right to petition. We hold that defendants' right to petition was not abridged when their employment was terminated. To hold otherwise would force plaintiff and the defendants to associate with one another in a nonconsensual relationship. Absent contract or statutory provision, plaintiff was free to discharge defendants. The trial court's judgment in favor of plaintiff on the defendants' counterclaim was well supported by both the law and the evidence.

What remains is plaintiff's cross-appeal which claims that double damages under section 2 of "An Act to revise the law in relation to landlord and tenant" should have been awarded. (Ill. Rev. Stat. 1975, ch. 80, par. 2.) We note initially that a notice of cross-appeal had been filed by plaintiff as to only one defendant, Richard Hoadley. We therefore dismiss plaintiff's cross-appeal as to the following defendants; William Kurek, Walter Turdele, Robert Togikawa, and Edwin Jones. We will determine the merits of plaintiff's cross-appeal as to defendant Hoadley.

■■ Before double damages may be awarded under section 2 (Ill. Rev. Stat. 1975, ch. 80, par. 2), the plaintiff must prove that the defendants' holding over was wilful. Section 2 is essentially punitive in nature. (*Stuart v. Hamilton*, 66 Ill. 253) and should be applied cautiously. We believe that such a punitive award is not applicable to situations where a bona fide dispute exists between the parties as to who had the right of possession. Here, there can be little doubt as to the bona fides of the controversy between the golf professionals and the park district in light of the original

adjudication by the circuit court of Peoria County that the golf pros were entitled to possession. While that judgment was reversed by this court in *Pleasure Driveway & Park District v. Kurek*, 27 Ill. App. 3d 60, 325 N.E.2d 650, thereby making the golf pros responsible for damages caused by their holdover, that initial determination did conclusively establish the bona fides of the defendants' position and render section 2 inapplicable. The trial court's order denying double damages is supported by the evidence.

For the foregoing reasons the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

STENGEL, P. J., and SCOTT, J., concur.