**William KUREK et al.,
Plaintiffs-Appellants,**

v.

**PLEASURE DRIVEWAY AND PARK
DISTRICT OF PEORIA, ILLINOIS,
et al., Defendants-Appellees.**

**No. 76–1791.**

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 30, 1977.

Decided March 17, 1978.

John E. Cassidy, Jr., Peoria, Ill., for plaintiffs-appellants.

Daniel Hardy, Gary S. Clem, William V. Altenberger, Wm. McD. Frederick, Peoria, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and PELL, and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This litigation has been brought before this court again by virtue of the plaintiffs-appellants' (hereinafter "golf pros") motion for injunctive relief, the defendants-appel-

lees' (hereinafter collectively "park district") response thereto and the golf pros' opposition to the response. The relief sought at this time from this court is the enjoining of the park district from enforcing and collecting a state court judgment in the amount of $127,605.

We are confronted with difficult problems, including our jurisdiction to act in the premises; the applicability of Rule 8, Fed. R.App.P., and the injunctive relief provision of Section 16 of the Clayton Act (15 U.S.C. § 26), upon which the golf pros rely; the applicability of the anti-injunction act (28 U.S.C. § 2283), and policies of federalism and comity, upon which park district relies; and a potpourri of miscellaneous issues such as res judicata, full faith and credit, suretyship, and general principles of equity.

To put these matters in perspective we must briefly set forth a summary of prior litigation. The state litigation, being basically in the nature of forcible entry and detainer proceedings which resulted in the monetary judgment, is reported as follows: *Pleasure Driveway and Park District of Peoria v. Kurek,* 27 Ill.App.3d 60, 325 N.E.2d 650 (1975); *Pleasure Driveway and Park District of Peoria v. Jones,* 51 Ill. App.3d 182, 9 Ill.Dec. 677, 367 N.E.2d 111 (1977). The Illinois Supreme Court summarily denied golf pros' petition for leave to appeal the damage judgment on November 23, 1977, and the mandate was returned to the state appellate court and eventually, on December 20, 1977, to the state trial court.

The federal antitrust litigation is reported: *Kurek v. Pleasure Driveway and Park District of Peoria, Illinois,* 557 F.2d 580 (7th Cir. 1977). Subsequent to the denial of rehearing in that case on August 11, 1977, park district moved this court to stay its mandate, which motion was granted on August 22, 1977. Two days later golf pros filed their response to the motion to stay mandate, objecting to the granting thereof and asking as an alternative matter in the event the motion were to be granted that park district be enjoined from enforcing the state court judgment. Treating the response as a motion to reconsider, this court denied the motion, but with regard to the alternative relief stated the following:

> Plaintiffs-appellants' request for alternative relief is premature since it does not appear that the enforcement and collection of the state court judgment is imminent. The parties are directed, however, to notify the court of any collection efforts made while the mandate resides in the Seventh Circuit. Accordingly, the request for alternative relief is denied at this time.

Petition for certiorari in the Supreme Court of the United States was timely filed by park district, No. 77–440, 46 U.S.L.W. 3221 (Sept. 19, 1977), which pursuant to Rule 41(b), Fed.R.App.P., had the effect of continuing the stay of the mandate of this court. Subsequently, on December 21, 1977, park district advised a judge of this court by letter as follows:

> The Illinois Supreme Court issued its mandate in that action and subsequently the Appellate Court issued its mandate to the Trial Court. There had been no other proceedings in this matter, and no supersedeas or stay of proceedings has been requested or entered as of this date. An appeal bond, with personal sureties, was provided by the golf pros. In order to avoid the charge that the sureties were released from their surety obligation because the Park District did not take prompt action, collection and enforcement proceedings must begin promptly. These sureties are not parties before this Court and are not bound by the disposition of the federal litigation, and they might claim release in the event enforcement efforts are not timely made. It is, therefore, our intent to proceed in a prompt manner to enforce the final judgment of the Illinois Court against the golf pros.

The motion presently before this court followed park district's letter.

The Supreme Court has taken no action on the pending petition for certiorari. Park district has not challenged in this posture the jurisdiction of this court to rule

upon the motion for injunctive relief. We are of the opinion that upon a proper showing, at least in the absence of the granting of certiorari in the Supreme Court, this court could grant the injunctive relief request. *See Louisville, N. A. & C. Ry. Co. v. Louisville Trust Co.,* 78 F. 659 (D.Ky.1897); *cf. Waskey v. Hammer,* 179 F. 273 (9th Cir. 1910).

Golf pros, from the point of view of policy desirability of all facets of a common controversy between parties being fully concluded before one of those parties is required to pay the other a substantial sum of money, make an appealing case. They also point out that in the event of their ultimately prevailing in the federal antitrust litigation, the amount of the state court judgment, if it is enforced and collected, could very possibly be the basis of a triple damage judgment against the park district defendants. Golf pros express no lack of confidence in their ability ultimately to prevail. We express no opinion except that they probably have a long and tortuous roadway ahead of them. Also, golf pros point out the lack of harm to park district in that the injunction, if granted by this court, could be conditioned upon the supersedeas bond which is presently in full force and effect as security for the state court judgment. It is to be noted at this point that golf pros provide us no authority to the effect that the sureties would not be released from their surety obligation of the supersedeas bond by virtue of the park district not taking prompt collection action and enforcement proceedings. We have done no independent research on this matter.

Golf pros in the present proceeding primarily rely upon claimed irreparable harm if the monetary state court judgment is collected and assert that under Rule 8, Fed. R.App.P., and Section 16 of the Clayton Act this court should grant the injunctive relief. The park district in addition to relying upon the anti-injunction act, 28 U.S.C. § 2283, argues that this court is required to give full faith and credit to the judgment entered by the Illinois courts which the golf pros have not attempted to have reviewed

by the United States Supreme Court. Golf pros counter that it would have been futile to have attempted to take the Illinois action to the United States Supreme Court inasmuch as the Illinois Supreme Court's action was discretionary and there was no federal question involved. Again, complicating the issues is the fact that at one time in the litigation in the state courts golf pros attempted to assert the antitrust defense which was severed for trial and eventually golf pros were judicially prohibited from proceeding in the Illinois courts on this. It is uncertain whether this phase of the matter could have been a more promising basis for an attempt to secure certiorari. In any event, no attempt was made to review the Illinois state court proceedings beyond the state court system. Both parties have briefed extensively as to whether there are antitrust violations involved in the actions of park district. However, as the matter presently stands, unless this court's decision is reversed in the Supreme Court, the golf pros will have an opportunity to attempt to demonstrate in the district court such violations. We express no opinion further than that, however, as to the success of that effort.

Because of the result we reach in the present matter we do not deem it necessary to consider the full faith and credit argument. Neither of the parties have furnished us any authority on the subject. We instead turn to the anti-injunction statute which in its plain language, unless one of the two statutory exceptions is present, would require us to refrain from granting an injunction in the present case. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), leaves no doubt that the plain language, barring the existence of one of the statutory exceptions, means exactly what it says.

One essential issue for disposition here shapes up then under the anti-injunction act being whether the present case would come under either of the exceptions of the act: first, whether the injunction provisions of the Clayton Act are to be construed as an

express authorization by Congress permitting a stay of proceedings in a state court or, second, whether an injunction here would be necessary in aid of federal jurisdiction or to protect or to effectuate the judgment of this court.

We note initially that other courts when presented analogous situations have denied injunctions without finding it necessary to determine whether the antitrust laws constitute an exception to the anti-injunction statute. Thus in *Response of Carolina v. Leasco Response, Inc.,* 498 F.2d 314 (5th Cir. 1974), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645, the court found there was no reason for granting an injunction where recovery in the state court proceedings is premised on an obligation collateral to but independent of the agreement which violates the antitrust law and where it is not necessary for the state court in granting relief to depend on or enforce the agreement violating the antitrust provisions, there being under those circumstances, according to the court, no illegality to bar the state suit. *Id.* at 319.

In *R & J Sales, Inc. v. Siesta Sleep Shop, Inc.,* 385 F.Supp. 202 (D.Mass.1974), the court in denying an injunction observed that the state summary proceedings did not seek to enforce conduct complained of as violative of the antitrust laws, nor were they intended to compel adherence to illegal practices. Instead they merely sought to enforce a contractual right given in a lease and triggered by the termination of the franchise agreement for non-payment of franchise fees. The court also relied upon policies of comity and federalism.

We are of the opinion that the rationales developed in these two cases might well be those which we should apply here in denying an injunction. We now, however, have a later pronouncement on the general subject from the Supreme Court in *Vendo Co. v. Lektro-Vend Corp.,* — U.S. —, 98 S.Ct. 702, 54 L.Ed.2d — (1977), to which we now turn.

Both parties in the present case rely upon *Vendo.* Unfortunately, guidance for us in the present situation is not as clear as it might be in view of the three-two-four division of the Court there.[1] While the plurality opinion does indicate that the Clayton Act injunction provision does not constitute an express Congressional authorization that would constitute an exception to the anti-injunction act, four justices in the dissenting opinion clearly think there would be such an exception, and two more justices in the concurring opinion express the opinion that at least sometimes there would be authority under the Clayton Act to enjoin state court proceedings despite the anti-injunction act, although in the present case before the Court these two justices did not deem that it was appropriate for an injunction to be granted.

■ Reading the opinions as indicating that at least if the exceptional circumstances described in the concurring opinion are made out, this court could grant an injunction under the Clayton Act, we are not persuaded that such circumstances have been shown here. Mr. Justice Blackmun writing for himself and the Chief Justice referred to a pattern of baseless repetitive claims or an abuse of the state adjudicative process as a prerequisite to issuance of an injunction. He found that Vendo was not using the state court proceedings as an anti-competitive device in and of itself. In the case before us the golf pros attempt to show us that this was done and suggest strongly that park district misled the Illinois courts. We decline, however, to give credence to these conclusionary assertions. Golf pros at all times participated in the state proceedings and although some ex-parte rulings were made, golf pros were there given an opportunity to, and did, seek to set aside the challenged rulings. There is no showing that there was a failure of due process in the picture which has been

---

1. Although we do not deem it necessary to consider the applicability of principles of comity and federalism aside from the anti-injunction statute issue, we do not find clear guidance because of the decision in *Vendo* as to the extent to which such principles should be applied in the present situation.

presented to us. The state litigation which was vigorously contested appears to us to come within the ambit of Mr. Justice Blackmun's finding in *Vendo* that the state court proceedings were not an anti-competitive device in and of themselves.

With regard to the second possible exception of the anti-injunction act, we do note the language in the plurality opinion to the effect that no case of the Supreme Court has ever held that an injunction "to preserve" a case or controversy fits within the "necessary in aid of its jurisdiction" exception nor did the parties direct the Court to any federal court decisions so holding. —— U.S. at ——, 98 S.Ct. 702. We advert to this in view of what is apparently the principal underlying contention of golf pros that the collection of the monetary judgment will be crippling in its financial drain to their continuing in the litigation. This is not expressly stated but seems to be implicit in the extended attempt to show us that golf pros were the subject of an antitrust conspiracy, much of which matter is still in the stage of assertion and has not reached the stage of the difficult proof entailed.

Notwithstanding our sympathy for the position in which golf pros find themselves in this ongoing litigation, we must conclude that it would be inappropriate for us to grant the injunction. Accordingly, the motion of the plaintiffs-appellants is denied.

FAIRCHILD, Chief Judge, concurring.

In this case, appellants (hereinafter referred to as "golf pros") seek an injunction against the enforcement of a final state court judgment. I find it difficult to distinguish this attempted process from a review of the state court judgment. *See Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 293, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1969). As a general rule, the lower federal courts are without jurisdiction to review final state court judgments absent some recognized ground for collateral attack such as habeas corpus. The only federal forum for review of state court judgments, unless some basis exists for collateral attack, is the Supreme Court.[1] *See, e. g., Warriner v. Fink*, 307 F.2d 933, 936 (5th Cir. 1962). *Cf. Adkins v. Underwood*, 520 F.2d 890, 892 (7th Cir. 1975).

Assuming that we might have some jurisdiction to enjoin enforcement of the state court judgment, but for the Anti-Injunction statute, golf pros argue that § 16 of the Clayton Act, as interpreted by *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), constitutes an expressly authorized exception to the Anti-Injunction statute under the facts of this case. As I read *Lektro-Vend,* however, proceedings in state court can only be enjoined under § 16 if those proceedings are part of a "pattern of baseless, repetitive claims." 97 S.Ct. at 2894 (Blackmun, J., concurring)[2] Since the present case involves one action brought in state court which resulted in final judgment in favor of the park district, it certainly cannot be said that Park District engaged in a "pattern of baseless, repetitive claims." I agree with the majority that no other exceptions to the Anti-Injunction Act are applicable.

I therefore concur in the denial.

1. I recognize that the Supreme Court in *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), assumed without deciding that there may be situations where a federal court can issue an injunction against enforcement of a final state court judgment. Petitioner in *Lektro-Vend* argued that the federal courts were required to give full faith and credit to a final state court judgment; however, this question was not presented in the petition for certiorari and was not passed upon by the Court. 97 S.Ct. at 2886 and n. 4.

   *Lektro-Vend* was a case which originated in this circuit. Had I been on the panel when it was here, my reluctance for review by a lower federal court of a final state court judgment would probably have caused me to dissent.

2. Because of the 3–2–4 division of the Court in *Lektro-Vend,* the concurring opinion of Justice Blackmun was decisive. The "pattern of baseless, repetitive claims" standard is derived from *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), where the Court stated that such use of the adjudicatory process could constitute a violation of the antitrust laws.