**In re NORTH AMERICAN COMMUNICATIONS, INC., Debtor.**

**NORTH AMERICAN COMMUNICATIONS, INC., Objector,**

v.

**Thomas LACZYNSKI, Respondent.**

**Bankruptcy No. 91–03794–BM. Motion No. 92–2574M.**

United States Bankruptcy Court, W.D. Pennsylvania.

June 4, 1993.

Stephen J. Laidhold, Sable, Makoroff & Gusky, P.C., Pittsburgh, PA, for plaintiff/debtor.

Scott E. Tuckman, Kwiatt & Silverman, Ltd., Chicago, IL, Office of U.S. Trustee.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Thomas Laczynski has filed a proof of claim in the amount of $301,998.17. He seeks $221,998.17 in unpaid sales commissions to which he claims entitlement and $80,000.00 in unpaid salary which he claims was guaranteed.

Debtor North American Communications, Inc. ("NAC") has objected to the proof of claim. NAC concedes that Laczynski is entitled to sales commissions in the amount of $77,448.37 but denies that he is entitled to the remaining $144,549.80 in sales commissions or to $80,000.00 in salary.

NAC's objection will be sustained in part and the proof of claim filed by Mr. Laczynski will be allowed in the amount of $213,677.93. The remainder will be disallowed for reasons set forth below.

—I—

### FACTS

NAC is in the business of producing customized mass mailings. Its production fa-

cility is located in Duncansville, Pennsylvania, and is under the supervision of Michael Herman, NAC's Vice President. Its sales office is located in Armonk, New York. Robert Paltrow, NAC's President, and Chet Williams, NAC's Vice President for Sales and Marketing, work out of the sales office.

NAC utilizes sales representatives to market its services. The terms and conditions of compensation are determined by Paltrow and differ for each sales person.

Laczynski became NAC's sales representative for the Chicago metropolitan area on July 1, 1985. He was paid a salary of $63,000.00 during his first year of employment plus a two percent (2%) override commission on sales made in the Chicago area by anyone making sales on behalf of NAC.

No other sales person worked for NAC in the Chicago area when Laczynski was hired. Shortly thereafter, NAC hired Michael Mancini to make sales on its behalf in the Chicago area.

During his first year of employment, Laczynski was instrumental in obtaining Montgomery Ward Legal Services, also known as the Signature Group, as a customer.

Sales generated by Laczynski during the first year of his employment totalled $2,076,524.32. The Signature Group accounted for $1,785.201.42, or eighty-six percent (86%) of his total sales for that year.

Laczynski was paid all of the salary and override commissions to which he was entitled during his first year of employment.

The terms of Laczynski's compensation were altered on July 1, 1986. Instead of being paid a straight salary plus an override commission, Laczynski was paid a commission on a sliding scale on all sales he made. He received a five percent (5%) commission on all sales to a customer during the first year and on that portion of sales to that customer during the second year which exceeded sales during the first year. He received a four percent (4%) commission on sales to a customer during the second year which matched sales to them during the first year. If sales to a customer during the second year were less than sales to it during the first year, he received a three percent (3%) commission.

Paltrow sent a letter to Laczynski on August 18, 1986 which confirmed the terms of their revised agreement as to Laczynski's compensation. The salient portion of the letter reads as follows:

Dear Tom:

I just wanted to confirm our understanding of the other day regarding your second year with North American.

I believe we have agreed that your three incremental increases in your salary will continue as previously agreed. Additionally, this salary will act as a draw against commissions based on 5% of sales for any accounts first year activity, 4% in the second year, and 3% in the third year. All volume at a given account which exceeds the volume from the first year, in the second year, will be commissionable at 5% and then subsequently down.

Laczynski's total sales increased by 461% during the second year from $2,076,524.32 to $8,237,228.94. The vast majority of those sales were to the Signature Group, which increased by 440% from $1,785,-201.42 to $7,993,153.90. Sales by Laczynski to the Signature Group accounted for 97% of all his sales during the second year.

Frank Mancini procured sales amounting to $822,024.37 during the second year of Laczynski's employment by NAC.

The terms and conditions of Laczynski's compensation were revised yet another time after discussions in June of 1987 between Paltrow and Laczynski. Effective July 1, 1987, Laczynski was paid a salary of $8,000.00 per month which was to continue "indefinitely". Also, he was to continue to receive commissions on sales in accordance with the sliding scale in effect during the prior year, except for sales to the Signature Group.

On June 26, 1987, Paltrow sent a letter to Laczynski which confirmed the terms of their agreement. The salient portions of the letter read as follows:

The following is a breakdown of what we feel is appropriate considering the present state of circumstances between Chicago and our future:

1. All commissions due from sales as of June 30th will be paid in a timely fashion.

2. Commencing July 1st a salary will be instituted at $8,000. per month. This salary will continue indefinately (sic) with the development of the new factory installation.

. . . .

4. You will be the president of a new corporation formed surrounding the operation of a Midwestern manufacturing facility.

5. You will receive, with no investment, 25% equity interest in the new corporation.

6. You will continue to receive commissions on a 5, 4, 3, sliding scale with direct mail customers outside of the legal services group.

. . . .

8. You will be responsible for the overall operation of the Midwestern operation, an appropriately trained plant manager from Duncansville will be responsible for day to day manufacturing.

I hope the above is an appropriate point of departure for the future. Please call upon receipt.

Shortly after he had begun his third year as a sales representative for NAC, several key employees involved in production at the Duncansville plant complained vociferously to Michael Herman about threats and offensive language used by Laczynski. They threatened to quit if the abuse continued.

Herman informed Paltrow of the complaints and insisted that Laczynski be discharged lest the production plant suffer. Paltrow advises he reluctantly agreed with Herman. On August 4, 1987, Chet Williams notified Laczynski that he was terminated from his employment effective immediately.

Laczynski was paid $8,000.00 in salary for the month of July, 1987 and $8,000.00 in salary for August of 1987. He has not been paid any additional salary since he was discharged. NAC has not paid Laczynski on any sales to the Signature Group where the work was completed subsequent to July 1, 1987.

It is NAC's practice to issue an invoice to a customer with regard to a particular order after the job has been completed. Commissions are not paid by NAC to a sales representative until after the customer has paid NAC for the work performed.

Approximately six (6) months after he was discharged, Laczynski brought suit against NAC in the United States District Court for the Northern District of Illinois. Count I is for breach of contract and seeks $221,998.17 in unpaid sales commissions. Count II alleges that NAC's failure to pay the commissions constitute an "unreasonable and vexatious delay of payment" and seeks interest in the unpaid commissions at the rate of five percent (5%) per annum pursuant to ILL.REV.STAT. Ch. 17, para. 6402 (1987). Count III of the complaint states a claim for breach of an employment contract and seeks an additional $80,000.00 in unpaid salary.

On October 18, 1991, NAC filed a voluntary chapter 11 petition in this court, which automatically stayed the above lawsuit before it was adjudicated.

On November 15, 1991, Laczynski filed a proof of claim in this case seeking $221,998.17 in unpaid sales commissions and an additional $80,000.00 in unpaid salary. The proof of claim replicates the above lawsuit except that it does *not* seek to recover interest on unpaid commissions.

NAC objected to the proof of claim. It conceded that Laczynski is entitled to a portion of the unpaid sales commissions but objected to the remainder of his proof of claim.

An evidentiary hearing on the objection to the proof of claim was held on April 22, 1993, at which time both sides were given an opportunity to present any evidence they considered appropriate.

—II—

ANALYSIS

As has been indicated, Laczynski's proof of claim consists of two parts. He seeks

$221,998.17 in unpaid sales commissions. Also, Laczynski alleges that he and Paltrow had orally agreed that his employment as of July 1, 1987 was for a fixed term of one (1) year and that he was to be paid a guaranteed salary of $96,000.00. Laczynski, who had been paid $16,000.00 in salary before he was discharged, claims that he is entitled to the remaining $80,000.00 of his guaranteed salary.

NAC conceded at trial that Laczynski is entitled to $77,348.37 in sales commissions but denies that he is entitled to the remaining $144,549.80 in claimed commissions.

A portion of these disputed commissions—i.e., $136,329.56—is for jobs procured by Laczynski prior to July 1, 1987, but completed thereafter. According to NAC, Laczynski is not entitled to these commissions because the employment contract in effect as of July 1, 1987 provided that Laczynski's entitlement to commission on sales to the Signature Group ended as of June 30, 1987.[1]

The remaining portion of these disputed commissions—i.e., $8,220.24—is for sales procured by Frank Mancini during the second year of Laczynski's employment. Laczynski claims that he and Paltrow had agreed that Laczynski would receive an override commission of one percent (1%) on sales by Mancini during Laczynski's second year of employment. NAC denies that it agreed to pay Laczynski an override commission during the second year of his employment.

As for that portion of Laczynski's claim for unpaid salary of $80,000.00, NAC denies that he is entitled to any salary for the ten-month period following his discharge. According to NAC, Laczynski was an at-will employee with a monthly salary of $8,000.0. It denies that Laczynski was employed for a fixed term of one year at a guaranteed salary when he was discharged on August 4, 1987.

Different burdens for claims brought pursuant to 11 U.S.C. § 502(a) lie with dif-ferent parties at different times. *See In re Allegheny International, Inc.,* 954 F.2d 167, 173 (3d Cir.1992).

■ The initial burden lies with the claimant, who must allege facts in the proof of claim that are sufficient to support the claim. If facts sufficient to establish legal liability are alleged, the proof of claim is *prima facie* valid and claimant has met the initial burden of going forward. *Id.*

■ The objector then must produce evidence which is at least equal in force to the *prima facie* case and which, if believed, would refute at least one of the essential elements of the claim. *See In re Allegheny International,* 954 F.2d at 173–74.

■ If the objector meets this burden, the burden then shifts to the claimant to establish the claim's validity by a preponderance of the evidence. *In re Allegheny International,* 954 F.2d at 174. The burden of persuasion, however, is upon the claimant at all times. *Id.*

### A.  *Unpaid Commissions On Sales By Laczynski*

As has been indicated, NAC argues that Laczynski is not entitled to these commissions because the employment contract in effect as of July 1, 1987 provided that after June 30, 1987, he no longer was to receive commissions on sales to the Signature Group.

Laczynski counters that he is entitled to the commissions pursuant to the procuring cause rule.

The procuring cause rule protects a sales representative who is discharged prior to culmination of a sale but who has done everything necessary to effect the sale. *See Heuvelman v. Triplett Electrical Instrument Co.,* 23 Ill.App.2d 231, 237, 161 N.E.2d 875, 878 (1959).[2]

■ Under the procuring cause rule, an agent or sales representative who "procured" a sale through their actions prior to

---

1. With one relatively minor exception, all of these contested commissions are for jobs for the Signature Group which were completed by NAC *after* July 1, 1987.

2. The parties have stipulated that Illinois law applies to this case.

being terminated may be entitled to a commission on that sale. *See Technical Representatives, Inc. v. Richardson Merrill, Inc.,* 107 Ill.App.3d 830, 833, 63 Ill.Dec. 668, 671, 438 N.E.2d 599, 602 (1982).

■ The critical distinction regarding the rule is between procurement of a sale and its consummation. A sales representative may be entitled to a commission on a sale even though their involvement in it ceased prior to its consummation. If the sales representative "all but consummated" the sale through their activities—i.e., they did "everything necessary to effect the sale"—they are entitled to a commission notwithstanding the fact that it was consummated by the principal or by another agent. *See Heuvelman,* 23 Ill.App.2d at 237, 161 N.E.2d at 878.

■ The determination as to whether the procuring cause rule applies to a given situation must be made on a case-by-case basis. *Id.*

■ There is one significant limitation on the applicability of the procuring cause rule. It applies only if the contract of employment between the employer and sale representative does *not* expressly provide when commissions are to be paid. *See Technical Representatives,* 107 Ill.App.3d at 833, 63 Ill.Dec. 668, 438 N.E.2d at 602.

■ NAC argues that the procuring cause rule is not relevant here because the contract of employment in effect as of July 1, 1987 provided that Laczynski's entitlement to commissions on sales to the Signature Group ended as of June 30, 1987. According to NAC, Paltrow and Laczynski had orally agreed that Laczynski would no longer receive commissions on sales to the Signature Group as of July 1, 1987, *without regard to whether Laczynski had procured the sales prior to that date.*

This assertion is without merit. The contract of employment in effect as of July 1, 1987 contained no such provision.

The letter dated June 26, 1987 which Paltrow sent to Laczynski does not support NAC's position. Paragraph 6 of the letter asserts that Laczynski would continue to receive commissions on sales "outside of the legal services group" in accordance with the sliding scale which had been in effect during the previous year.

The letter is silent on this matter. It is not clear from the letter whether Laczynski no longer was to receive commissions on sales to the Signature Group procured by him after June 30, 1987 or whether he no longer was to receive commissions on such sales without regard to when the sales had been procured. It is not possible to determine from the letter which interpretation is correct.

Paltrow testified that he and Laczynski had agreed orally that as of July 1, 1987 Laczynski would no longer receive commissions on sales to the Signature Group regardless of when the sales had been procured. Laczynski denied that he and Paltrow had so agreed. According to Laczynski, it was agreed only that he no longer would receive commissions on sales to the Signature Group which he procured *subsequent* to June 30, 1987.

Laczynski's testimony is credible in this regard whereas Paltrow's is not. It is not possible that Laczynski would have agreed to relinquish commissions to which he already was legally entitled without receiving something in return. There is no indication that Laczynski received anything in exchange for giving up considerable commissions.

■ It thus remains to be determined whether Laczynski is entitled, as he claims, to these disputed commissions under the so-called procuring cause rule.

As has been noted, a sales representative who has "all but consummated a sale"—i.e., who did "everything necessary to effect the sale"—is entitled under the procuring cause rule to a commission on that sale even though the sale was consummated either by the principal or by another agent of that principal. *Heuvelman,* 23 Ill. App.2d at 237, 161 N.E.2d at 878.

Laczynski is entitled to the commissions at issue here under the procuring cause rule because he did everything necessary

prior to July 1, 1987 to effect the sales giving rise to these commissions.

Paltrow's testimony that much remained to be done after July 1, 1987 to ensure that these sales came to fruition is not credible. He did not explain with any specificity what remained to be done after June 30, 1987 to consummate these particular sales. Moreover, his testimony was self-serving in that it unquestionably was meant to deprive Laczynski of commissions on sales from which NAC presumably had derived a profit. Additionally, it was inconsistent with his testimony that much of plaintiff's post-sale procurement activity was merely unnecessary hand-holding. NAC effectively was seeking to profit a second time at Laczynski's expense.

Laczynski "all but consummated the sales" which are at issue here prior to July 1, 1987. He devoted considerable time and effort prior to July 1, 1987 to ensure that these sales would be consummated. Any action taken by NAC after June 30, 1987 in this regard was *de minimis* and was not of sufficient magnitude to deprive Laczynski of his commissions.

NAC's objection to Laczynski's claim for commissions amounting to $136,329.56 for sales to the Signature Group which he procured prior to July 1, 1987 will be overruled.

### B. *Override Commission On Sales By Mancini*

■ Frank Mancini was responsible for sales totalling $822,024.37 during Laczynski's second year of employment.

Laczynski contends that the employment contract in effect during his second year of employment provided that he was to receive an override commission of one percent (1%) on any sales made by Frank Mancini.

NAC denies that the contract of employment for Laczynski's second year of employment contained such a provision.

Laczynski, who has the burden of persuasion in this matter, has *not* established by a preponderance of the evidence that the contract of employment during the second year contained such a provision.

The letter dated August 18, 1986 Paltrow sent to Laczynski to confirm the terms of Laczynski's employment during the second year mentions only the sliding scale of commissions which was described previously. No mention is made of an override commission on sales made by Frank Mancini.

Laczynski admits that he did not take issue with the letter's failure to mention an override commission. It is reasonable to expect that Laczynski, an astute businessman, would have brought such an omission to Paltrow's attention had they agreed to an override commission.

Laczynski's testimony that he and Paltrow had agreed orally to such a provision and that the failure of the letter to mention it was due to oversight is not credible.

### C. *Breach Of Employment Contract*

According to Laczynski, his employment as of July 1, 1987 was for a fixed term of one year at a guaranteed salary of $96,000.00. He claims that NAC breached the contract of employment by discharging him in August of 1987 without paying the remaining $80,000.00 of his guaranteed salary.

NAC responds that Laczynski was an at-will employee who was hired for an indefinite period of time at a monthly salary of $8,000.00. It asserts that Laczynski was paid all salary to which he is entitled.

■ A contract of employment having no fixed term or duration is presumed to be an at-will employment. The presumption can be overcome, however, by evidence that the parties nonetheless agreed otherwise. *See Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 489, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987).

■ An at-will employment is terminable at any time by either party for any or for no cause or reason whatever. *See Pleasure Driveway and Park District of Peoria v. Jones*, 51 Ill.App.3d 182, 190, 9 Ill.Dec. 677, 683, 367 N.E.2d 111, 117 (1977).

■ This principle is an outgrowth of the notion that if an employee can end his

employment under any condition the employer should have the same right. *Duldulao*, 115 Ill.2d at 489, 106 Ill.Dec. at 12, 505 N.E.2d at 318.

This principle also is not without its exceptions. Illinois law to date recognizes three exceptions to the at-will doctrine:

(1) when the discharge contravenes public policy;

(2) when the discharge violates particular conditions set forth by the parties; and

(3) when there is a clear and definite oral agreement for permanent employment which is based on sufficient consideration.

*See LaScola v. U.S. Sprint Communications*, 946 F.2d 559, 563–64 (7th Cir.1991). Moreover, an at-will employee may not be deprived of an earned commission by a bad faith discharge which is intended to deprive the employee of those commissions. *See Gordon v. Matthew Bender & Co.*, 562 F.Supp. 1286, 1293 (N.D.Ill.1983).

Laczynski's contention that his employment as of July 1, 1987 was for a fixed term of one year at a guaranteed salary of $96,000.00 is *without merit.* His testimony that he and Paltrow had so agreed orally is not credible and must be rejected. The only credible testimony on this matter was offered by Paltrow, who testified that there was no such agreement.

The letter dated June 26, 1987 sent by Paltrow to Laczynski refers to this aspect of Laczynski's employment. Paragraph 2 of the letter reads as follows:

2. Commencing July 1st a salary will be instituted at $8,000 per month. This salary will continue indefinately (sic) with the development of the new factory installation.

The language used refutes Laczynski's contention that his employment was for a *fixed* salary of $96,000.00. The letter does *not* state his salary in an annualized amount. Rather, it states that his salary would be $8,000 "per month". Also, it states that his salary would continue "indefinitely" rather than for some fixed dura-

tion. Had the letter been inaccurate in these respects, an astute businessman like Laczynski surely would have so informed Paltrow. He never did so.

Finally, Laczynski has not shown that any recognized exception to the at-will doctrine applies to this case.

NAC's objection to the portion of Laczynski's proof of claim relating to unpaid salary must be sustained because Laczynski was an at-will employee who had been paid all salary to which he was entitled when he was discharged.

## D. *Interest*

One final matter remains.

Laczynski asserts that he is entitled to interest at the rate of five percent (5%) per annum on the allowed portion of his claim pursuant to ILL.REV.STAT. Ch. 17, para. 6402 (1987), which provides as follows:

Creditors shall be allowed to receive interest at the rate of five (5) per centum per annum ... on money withheld by an unreasonable and vexatious delay of payment.

According to Laczynski, NAC's refusal to pay the commissions to which he was entitled amounted to unreasonable and vexatious delay.

The request for interest will be denied for several reasons. To begin with, Laczynski did not include interest in his proof of claim. The request for interest, which was raised for the first time at the conclusion of the evidentiary hearing on NAC's objection to his proof of claim, exceeds the scope of the proof of claim.

Also, Laczynski must establish that NAC threw obstacles in the way of collection in order for him to recover interest under the above statutory provision. *See 612 North Michigan Avenue Building Corp. v. Factsystem, Inc.*, 54 Ill.App.3d 749, 754–55, 12 Ill.Dec. 613, 618, 370 N.E.2d 236, 241 (1977). Laczynski has not shown that NAC's refusal to pay him the sales commissions to which he was entitled at the time of his discharge was "unreasonable and vexatious". Having come from a law practice, the court can "divine" the activities of the parties over the years.

However, no credible proof on this issue was offered at hearing and we decline to "divine".