RICK BROWN *et al.*, Plaintiffs-Appellees, v. DONALD H. VEILE *et al.*,
Defendants-Appellants.

Fifth District   No. 5—92—0518

Opinion filed December 30, 1993.—Rehearing denied February 1, 1994.

John Baricevic, of Belleville, for appellants.

Thomas A. LeChien, of LeChien & Associates, Ltd., of Belleville, for appellees.

JUSTICE WELCH delivered the opinion of the court:

Plaintiffs, Rick Brown and Manufactured Housing Specialists, Inc., bring this action against defendants, Donald Veile and Arapaho Village Mobile Home Park, pursuant to the Mobile Home Landlord and Tenant Rights Act (Ill. Rev. Stat. 1987, ch. 80, par. 201 *et seq.*). Plaintiffs were the owners of a mobile home which was situated on a rental lot in defendants' mobile home park. Plaintiffs had purchased the mobile home from the previous tenant and, upon said purchase, were asked by defendants to remove the mobile home from the park. Plaintiffs' original complaint, filed July 14, 1987, in the circuit court of St. Clair County, sought a declaratory judgment that defendants have a legal duty and responsibility to offer and tender a lease of the mobile home lot to plaintiffs. Defendants' motion for summary judgment on the complaint was granted, the trial court finding that plaintiffs had no standing to bring an action under the Mobile Home Landlord and Tenant Rights Act (hereinafter Act) in that plaintiffs were not "tenants" within the meaning of that act.

The trial court's summary judgment was reversed by this court on appeal on June 14, 1990. This court held that plaintiffs do fall within the coverage of the Act. The cause was remanded to the trial court for further proceedings on the complaint. *Brown v. Veile* (1990), 198 Ill. App. 3d 513, 555 N.E.2d 1227.

On remand to the circuit court of St. Clair County, plaintiffs sought and were granted leave to amend their complaint against defendants to state a claim for damages under section 21 of the Act. (Ill. Rev. Stat. 1989, ch. 80, par. 221.) The complaint alleges that on and prior to June 10, 1987, Kevin Johnson was the owner of a mobile home which occupied a rental lot within defendants' mobile home park, that Johnson desired to sell the mobile home to plaintiffs, that prior to purchasing said mobile home, plaintiffs requested from defendants a mobile home lease, and that, although plaintiffs met all the qualifications and restrictions for occupancy of space in the park, they were refused a lease in violation of section 24 of the Act. Ill. Rev. Stat. 1989, ch. 80, par. 224.

Defendants counterclaimed for rent due from plaintiffs for the period of time the mobile home remained on defendants' lot without

the payment of rent by plaintiffs. The counterclaim seeks rent in the amount of $1,350 for the period July 1987 through April 1988 and asks for double this amount pursuant to section 9—202 of the Code of Civil Procedure. Ill. Rev. Stat. 1989, ch. 110, par. 9—202.

The gist of plaintiffs' cause of action against defendants is that, in refusing to grant plaintiffs a lease of the lot on which the mobile home sat, defendants violated section 24 of the Act. That section provides that the mobile home park owner may not prohibit, limit, restrict, obstruct, or in any manner interfere with the freedom of any mobile home owner to sell his mobile home to a purchaser of his choice. That section provides, however, that the park owner shall be allowed to promulgate any general qualifications or lawful restrictions on park residents which limit or define the admission of entrants to the park. The section further provides that the mobile home purchaser must obtain a written and signed lease prior to closing on the sale. (Ill. Rev. Stat. 1989, ch. 80, par. 224.) Section 21 of the Act provides that a tenant may sue to enforce all sections of the Act and that the court may award damages. Ill. Rev. Stat. 1989, ch. 80, par. 221.

Trial was held on all issues on April 1, 1992. Prior to trial, the parties stipulated that the mobile home park contains approximately 150 lots and that most of the leases of those lots contain a provision that upon sale of the mobile home, the home must be removed from the park. While stipulating to the accuracy and truth of these facts, defendants expressly did not stipulate to their relevance.

Plaintiff Rick Brown testified that he buys and sells mobile homes as a business and that the mobile home in question was bought by plaintiff for the purpose of fixing it up and reselling it and not to live in it. Brown admitted that the mobile home was in disrepair and that he paid $4,500 for it. Prior to purchasing the mobile home, in the first week of June 1987, Brown went to defendants' office and told Donald Veile that he was interested in purchasing the mobile home and would like to make arrangements for a lease on the lot. Brown told Veile that he intended to fix the home up and sell it. Brown explained the repairs he intended to make on the home and asked Veile for a lease of the lot. Veile responded that he would have to think about it. Veile explained that it was his policy that when a mobile home was sold, it had to be removed from the park.

Several days later Brown again spoke with Veile about a lease. Brown had prepared a written list of the repairs and improvements he intended to make to the mobile home. Brown again asked Veile for a lease on the lot. Veile would not give Brown an answer but indicated he was still thinking about it.

Several weeks later, Brown and Veile spoke again. At this point, Brown had already purchased the mobile home and had begun repairs. Veile stopped by the mobile home where Brown was working and told him that the home would have to be removed from the park. Veile inspected the improvements and repairs Brown had made but insisted that the home could not stay. Brown tendered rent to Veile on June 30, 1987, for the month of July in the incorrect amount of $125. Brown did not know the correct amount of the rent and guessed at the figure. This rent was refused by defendants, as were two other tendered payments. Brown received letters from defendants asking him to vacate the premises.

After the mobile home was repaired by Brown, he arranged to sell it to Doy Tuma in August 1987 for $12,900. When Tuma asked defendants for a lease on the lot, she was also refused because the mobile home had to be removed from the park. The sales arrangement accordingly fell through. Tuma was given a lease on another lot in the park on which sat a different mobile home she had purchased.

In April 1988, plaintiffs made another arrangement to sell the mobile home to Charlotte Wagner for $10,995. The mobile home was not allowed to stay in defendants' park but was removed to another mobile home park. This required that plaintiffs tear the mobile home down, put it back on wheels, have it towed to the other lot, remove the wheels, and set it up again.

Plaintiffs sought damages in the total amount of $10,268.36. This amount represented the difference in the sales price between Doy Tuma and Charlotte Wagner of $1,905; the cost of having the mobile home towed, $242.28; the cost of tearing the home down and setting it back up, $1,102.25; $5,388.18 in attorney fees incurred prior to the appeal; interest on plaintiff's purchase price of $4,500 for 8 months and 11 days because the initial sale to Tuma fell through, in the amount of $427.53; and $1,200 in interest on the $1,905 difference in the sale price which plaintiffs would have charged to finance the sale to Tuma.

With respect to defendants' counterclaim, Brown conceded that he was liable for rent for July and August but not for any additional rent which was incurred because of defendants' refusal to grant him or Doy Tuma a lease.

The mobile home was manufactured in 1976. Brown did not obtain a written lease prior to closing on the mobile home because defendants refused him one.

William R. Wuebbels testified that he is in the business of buying and selling mobile homes and also operates a mobile home park. He

has purchased mobile homes which were situated in defendants' mobile home park. These homes were always removed from defendants' park upon sale. Wuebbels had inspected the mobile home in question prior to plaintiffs fixing it up and would not have allowed it in his mobile home park. It was in very bad disrepair. After plaintiffs repaired it, the home was allowed to be moved to Wuebbels' mobile home park. Defendants' mobile home park is a nicer park than Wuebbels' park.

Donald H. Veile was called to testify by plaintiffs. Upon his being questioned about the leases on the 150 lots in his mobile home park, his counsel objected on the basis of lack of relevance. The objection was overruled. Veile admitted that most of the leases provided that upon sale of the mobile home, the home must be removed from the park. Such a provision has been included in most leases since the park opened in 1970. Veile also admitted that none of the leases were for a term greater than a month-to-month tenancy although the Act requires a mobile home park landlord to offer the tenants a 12-month lease.

Veile testified that Brown came to him and asked him if he could fix up the mobile home and resell it. Veile told him the home could not stay in the park because of its deplorable condition. While Kevin Johnson owned the home, it had been filled with piles of garbage and trash, and Veile did not think it was fit for human habitation even after Brown completed repairs.

B. Michael Miller testified that in December 1986, he purchased a mobile home located in defendants' mobile home park. He was told by a representative of defendants that the home could not remain in the park even if he made improvements on it.

Randy Earl Smith testified that he at one time owned a mobile home which was situated in defendants' park. His lease with defendants provided that if the home was sold it would have to be removed from the park. When Smith wanted to sell the home, he was told by defendants that it would have to be removed from the park. When Smith mentioned the Act to Veile, Veile indicated that the home could remain in the park.

Charlotte Wagner testified that she purchased the mobile home in question from Brown in April 1988. After purchase, it was moved from defendants' park to another park. She testified that when she bought the home it was in good condition and repair. Wagner would have preferred to leave the home in defendants' park. She admitted, however, that she did not speak with defendants regarding a lease as she was told by Brown that the home had to be moved.

Attorney Thomas A. LeChien testified that he represented plaintiffs in the original declaratory judgment action and in the appeal that followed. The total amount of attorney fees attributable to the declaratory judgment action was $5,003.53.

Donald H. Veile testified in his own behalf that he manages the mobile home park. Kevin Johnson's mobile home was first moved to the park in 1979. Immediately before Brown purchased the home it was in a generally deteriorated condition. The inside was in terrible condition, filled with debris and garbage. The home was a disgrace to other homes in the park.

In June 1987, Veile was contacted by Brown by telephone. Brown indicated he wished to purchase the home, fix it up, and resell it. Veile told him that the home was in deplorable condition and would have to be removed from the park. Brown did not ask for a lease. Brown subsequently contacted Veile again and asked if the home could stay, and Veile responded no. Brown did not ask for a lease. Brown at one point told Veile that he had purchased the home and he was going to fix it up and sell it without removing it from the park.

All of the homes in the park were owner occupied except for the home purchased by Brown. Normally when an individual sought a lease, an application was filled out and defendants would check credit and references. This procedure was not followed with respect to Brown because the mobile home would not be allowed to stay in the park because of its condition. Additionally, defendants did not want individuals purchasing homes in the park and repairing them in the park to resell them. Although Brown tendered rent, it was not accepted by defendants.

Veile identified defendant's exhibit 3, a list of rules and regulations for the park which were in effect at the time Kevin Johnson leased the lot and at the time plaintiff purchased the home.

Veile admitted that after Brown completed repairs and improvements on the home it was no longer in a deplorable condition. However, he testified that prior to Brown's purchase, the home was filled with garbage, trash, and filth and Veile did not think it could ever be sanitary and fit for human habitation after that. After viewing photographs of the interior of the home after Brown's repairs, Veile testified that he would allow a home in that condition in his park.

This concluded the evidence. After hearing argument, the court found that the evidence was overwhelming that, in practice and custom, defendants had continually violated the Act in failing to offer to tenants a 12-month tenancy and in requiring that upon sale of a home the home be removed from the park. The court stated: "There's no

question there's liability here. It's not even close." The court found in favor of plaintiffs and against defendants on the amended complaint as well as on defendants' counterclaim. The court awarded plaintiffs all of their requested damages except attorney fees. Damages were awarded in the amount of $4,888.28. By orders entered April 1 and April 8, 1992, the court entered judgment for plaintiffs on their complaint and against defendants in the amount of $4,880.20 plus costs, and in favor of plaintiffs and against defendants on defendants' counterclaim.

Defendants' post-trial motion was denied on July 14, 1992, and notice of appeal was filed August 3, 1992. Defendants raise several issues on appeal: (1) whether the trial court's findings of fact that Brown requested a lease from defendants and that plaintiffs qualified for such a lease are against the manifest weight of the evidence; (2) whether the trial court abused its discretion in admitting into evidence defendants' leases with tenants other than plaintiffs; (3) whether the trial court erred in including in the award of damages the interest amounts claimed by plaintiffs; and (4) whether the trial court's judgment in favor of plaintiffs on defendants' counterclaim for past-due rent is against the manifest weight of the evidence.

We reverse the judgment of the trial court in favor of plaintiffs on plaintiffs' complaint. We find no violation of the Act where the undisputed evidence shows that, at the time they purchased the mobile home and allegedly initially asked for a lease, plaintiffs did not meet the general qualifications and lawful restrictions established by the park to limit or define the admission of entrants to the park. The trial court's finding that plaintiffs did meet these qualifications and restrictions, implicit in its finding of a violation of the Act, is against the manifest weight of the evidence.

■■ Section 24(a) of the Act, which prohibits the park owner from interfering with the tenant's freedom to sell his mobile home to a purchaser of his choice, also provides that the park owner shall be allowed to promulgate any general qualifications or lawful restrictions on park residents which limit or define the admission of entrants to the park. (Ill. Rev. Stat. 1989, ch. 80, par. 224(a).) Thus, while section 24 of the Act provides protection for the tenant by expressly forbidding a park owner from interfering with a tenant's sale of his mobile home, it also provides protection for the park owner by expressly allowing him to promulgate reasonable qualifications for tenants of the park. While a mobile home owner must be free to sell his mobile home to the purchaser of his choice, the park owner cannot be forced to ac-

cept as a tenant whomever the home owner chooses as purchaser. Common sense and fairness dictate that this is so.

■ Thus, we hold that where a mobile home park owner has promulgated reasonable qualifications and restrictions on entrants to his park pursuant to section 24(a) of the Act, the purchaser of a mobile home in that park may properly be denied a lease where he does not meet those qualifications and restrictions. In such a case, denial of a lease does not constitute interference with the freedom of the mobile home owner to sell his mobile home to the purchaser of his choice. We note that section 15 of the Act (Ill. Rev. Stat. 1989, ch. 80, par. 215) provides that a tenant may be evicted for failure to comply with the park rules. Similarly, we find that a prospective tenant may be denied a lease where he does not meet the qualifications of the park.

In the instant case, one of the qualifications promulgated by defendants pursuant to section 24(a) of the Act provides as follows:

"REGISTRATION
    All homes must be modern and in good condition, approved by the management."

It is undisputed in the instant case that the mobile home which plaintiffs purchased and for which they wished to lease a lot was not in good condition. Indeed, the undisputed evidence is that the mobile home was in deplorable and unsanitary condition. There is no evidence that the mobile home was in any condition other than dilapidated, deplorable, and unsanitary, both on the inside and the outside. The mobile home for which plaintiffs wished to lease the lot simply did not meet the general qualifications and lawful restrictions promulgated by the park to limit or define admission of entrants to the park, and accordingly, defendants were not obligated to grant plaintiffs a lease for the mobile home.

It is important to note that, in the instant case, there is no evidence or inference that defendants were motivated by a desire to interfere with the freedom of their tenants to sell their mobile homes to the purchasers of their choice or that they used the rules and regulations of the park as an excuse to do so. Instead, the evidence indicates that defendants were sincerely attempting to maintain the high standard and quality of life in their mobile home park for the benefit of all the tenants by requiring that mobile homes admitted to the park be in good condition. Nor do we find the rules and regulations of the park to be unreasonable. There is no evidence that it was defendants' intent merely to interfere with the sale of mobile homes in their park.

We think that where the evidence demonstrates that the park owner was not attempting to interfere with the sale of the mobile home but was merely trying to maintain the quality of the park by enforcing its own rules and regulations which limit and define the admission of entrants to the park, there is no violation of the Act. Such is the case before us.

Plaintiffs argue that the rules and regulations of the park cannot be enforced against them because they were never delivered to plaintiffs when the lease was requested. Plaintiffs argue that, under section 14(a) of the Act, rules and regulations of the park are not enforceable against a tenant unless delivered to the tenant prior to his signing a lease. (Ill. Rev. Stat. 1989, ch. 80, par. 214(a).) While section 14(a) of the Act does so provide, we think it is clear from a plain reading of the statute that this section applies only to those who have already been accepted as tenants in the park and not to those who are merely applying to be tenants, as were plaintiffs. While delivery of the rules and regulations of the park to plaintiffs at the time they allegedly requested a lease may have aided plaintiffs in understanding the reason for their rejection, failure of delivery does not prohibit defendants from relying on those rules and regulations as a basis for denying plaintiffs a lease.

Finally, plaintiffs argue that by the time Brown completed repairs and improvements on the mobile home, it did meet the qualifications and restrictions promulgated by the park. While the evidence supports this argument, we think the relevant time to apply the qualifications and restrictions on admission of entrants to the park is at the time a lease is initially sought. A park owner is not obligated to grant a lease to one not otherwise qualified simply because of the purchaser's promise or representation that he will repair and improve the home. That plaintiffs repaired and improved the mobile home within two months of purchase does not alter the fact that at the time plaintiffs requested the lease the home did not meet the qualifications of the mobile home park.

Accordingly, we reverse the judgment of the circuit court of St. Clair County in favor of plaintiffs and against defendants on plaintiffs' complaint. In light of this decision, we find it unnecessary to discuss defendants' other claims of error with respect to the trial court's findings and judgment on plaintiffs' complaint.

■ We turn then to defendants' argument that the trial court erred in finding in favor of plaintiffs and against defendants on defendants' counterclaim for past-due rent. The counterclaim prays for past-due rent in the amount of $1,350 for the 10-month period of

July 1987 through April 1988 and further asks that said amount be doubled pursuant to section 9—202 of the Code of Civil Procedure.

The evidence presented at trial supports defendants' claim for past-due rent. It is undisputed that plaintiffs were in possession of the premises for the 10-month period July 1987 through April 1988. It is also undisputed that the customary rent for the lot was $135 per month. The owner of land may sue for and recover rent when lands are held and occupied by any person without special agreement for rent. (Ill. Rev. Stat. 1989, ch. 110, par. 9—201.) In the instant case, plaintiffs held and occupied defendants' lot without authority and without special agreement for rent. Despite defendants' repeated requests that plaintiffs vacate the premises, plaintiffs remained. The trial court's judgment that defendants were not entitled to recover past-due rent from plaintiffs for their period of possession is against the manifest weight of the evidence and contrary to law.

Plaintiffs conceded at trial that they were liable for rent for the months of July and August 1987. They argue, however, that they are not liable for rent thereafter because, had defendants not frustrated their sale to Doy Tuma, they would have vacated the premises in August 1987. Thus, plaintiffs argue, it was defendants' own misconduct which caused plaintiffs to remain on the premises. In light of our holding that defendants properly denied plaintiffs a lease and did not act improperly, plaintiffs' argument in this regard must fail.

With respect to defendants' claim for double the rent past due, we find that such an award would be inappropriate where a *bona fide* dispute existed between the parties as to who had the right of possession. (*Pleasure Driveway & Park District v. Jones* (1977), 51 Ill. App. 3d 182, 190, 367 N.E.2d 111, 117.) The provision for double recovery of rent past due is essentially punitive and should be applied cautiously. *Pleasure Driveway & Park District*, 51 Ill. App. 3d at 190, 367 N.E.2d at 117.

Accordingly, we reverse the judgment of the trial court in favor of plaintiffs and against defendants on defendants' counterclaim and, pursuant to the power granted us by Supreme Court Rule 366(a) (134 Ill. 2d R. 366(a)), hereby enter judgment in favor of defendants and against plaintiffs in the amount of $1,350 plus costs.

For the foregoing reasons, the judgment of the circuit court of St. Clair County in favor of plaintiffs and against defendants on plaintiffs' complaint is reversed; the judgment of the circuit court of St. Clair County in favor of plaintiffs and against defendants on defendants' counterclaim is reversed, and judgment is hereby entered

thereon in favor of defendants and against plaintiffs in the amount of $1,350 plus costs.

Reversed; judgment entered.

CHAPMAN and RARICK, JJ., concur.