2022 IL App (2d) 210603-U
No. 2-21-0603
Order filed July 19, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| AHMAD KAMIL and IBTIHAL MALIKI, | ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 19-LM-2410 |
| ZAID JAREOU, RAFEEF AL-SAADI, and UNKNOWN OCCUPANTS, | ) ) ) ) | |
| Defendants | ) ) | Honorable James F. McCluskey, |
| (Rafeef Al-Saadi, Defendant-Appellant). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's appeal from the trial court's order of possession is moot as defendant voluntarily relinquished possession of the property. The trial court did not err in awarding a monetary judgment for use and occupancy for the period after the entry of the order of possession through the date defendant actually vacated the property, and the trial court did not enter duplicative judgments for use and occupancy against defendant. Therefore, we affirm.

¶ 2    Plaintiffs Ahmad Kamil and Ibtihal Maliki filed the underlying eviction complaint against defendant Zaid Jareou, the previous owner of a townhome purchased by plaintiffs, and defendant-appellant Rafeef Al-Saadi, who lived at the townhome with Jareou and their two children. After a

bench trial, the court entered a judgment in favor of plaintiffs against defendants awarding them possession and a monetary judgment for use and occupancy. Defendants continued occupying the property for several months, and an order was entered awarding additional amounts for use and occupancy. Al-Saadi appeals the trial court's order granting plaintiffs possession of the property and the judgment for use and occupancy. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Jareou previously owned a townhome located at 485 George Street in Wood Dale where he lived with Al-Saadi and their two children. Prior to the instant case U.S. Bank brought an action against Jareou to foreclose on the property. On June 11, 2019, an order was entered in that case approving the foreclosure sale of the property to U.S. Bank.[1] That order also allowed the Du Page County Sheriff to evict Jareou. On June 7, 2019, plaintiffs purchased the property from U.S. Bank.

¶ 5      At some point the sheriff attempted to evict Jareou, but when the sheriff went to perform the eviction, they discovered a woman (presumably Al-Saadi) was living in the home. As she was not named on the foreclosure eviction order, the sheriff did not complete the eviction. Plaintiffs initially tried to settle the matter, but negotiations broke down, and on September 23, 2019, plaintiffs filed a complaint for eviction seeking an order of possession against the defendants. Plaintiffs again tried to settle the matter, but those negotiations also broke down, and on November 18, 2019, plaintiffs filed a motion seeking a monetary judgment for use and occupancy. On December 4, 2019, a hearing was held on the issue of use and occupancy. The trial court

---

[1]The June 11, 2019, order amended a prior March 21, 2019, order *nunc pro tunc*. The record does not reflect why or how the order was amended.

determined a fair rental rate to be $2000 per month and ordered the defendants to pay plaintiffs $3000 for the month of December through the scheduled January 15, 2020, trial date.

¶ 6    The matter proceeded to bench trial. The primary issue at trial was whether defendants had been properly served.

¶ 7    Plaintiffs' process server, Will Major, testified as follows. He was a licensed private detective and owned his own agency, Midwest Investigations. His agency was hired to serve defendants and attempted to serve defendants with a demand letter, a demand for possession of the property, and a copy of the foreclosure order from the prior foreclosure case. Service was attempted by agency employees a total of 14 times between September 2 and 16, 2019, and Major was present on two of those occasions. It was the agency's practice to post the documents to the front and garage doors with red or black duct tape, so they would be noticeable by someone entering or leaving the property. The documents were posted a total of 13 times, with the documents being removed between attempts. On 12 occasions the process servers either observed that someone was home or spoke with someone through the door.

¶ 8    On the two attempts where Major was present, he went to the back of the property to observe as one of his employees attempted to make contact at the front door. The back of the property has a garage door and above that is a balcony. The door to the balcony was open on both occasions. On the first occasion Major observed a woman who he identified as being present in court (presumably Al-Saadi, but that was not explicit). On the second occasion he observed children through the back door.

¶ 9    Maliki testified that sometime around August 2019, prior to the eviction action, he went to the property and met with Jareou to try to settle the matter. If Jareou would vacate the property, Maliki was prepared to pay Jareou an amount to cover six month's rent at any apartment. Jareou

counteroffered for a year's rent. Maliki did not accept the counteroffer and sought to have the Sheriff evict Jareou, pursuant to the order in the foreclosure case. Then, when the sheriff was unable to perform the eviction, Maliki initiated the instant case. Maliki then called Jareou sometime in mid-September 2019. He asked Jareou why he was ignoring the process servers, and based on their conversation, he was certain that Jareou had received the documents which the process servers had left.

¶ 10 Jareou flatly denied that anyone attempted to serve him on any of the dates indicated by the process servers. He claimed he would have opened the door if someone had knocked and that he was not evading service. He denied being aware of the foreclosure against him, stating he was working on a modification with the bank. He acknowledged that Maliki came to the property around July or August, but claimed they had tea and cookies and spoke about how Maliki moved from Iraq to the United States.

¶ 11 Al-Saadi also flatly denied that anyone tried to serve her on the dates in question. However, she also testified that it was her practice not to open the door to anyone but family if there was no male in the home, so she would not have opened the door had they knocked. She stated that she did not know about the foreclosure, except that one day in the fall of 2019 someone came to the house, and she opened the door believing it to be a delivery. The man said he had a paper for Jareou. She told him she lived at the house, and that Jareou was not there. She did not take the paper.

¶ 12 The trial court entered an eviction order of possession in favor of plaintiffs against all defendants. The order provided that defendants were to vacate the property by January 29, 2020. It also awarded plaintiffs $3000 for use and occupancy for the month of December 2019, to January 15, 2020. In rendering its decision, the court made it clear that it did not find the defendants'

testimony credible, stating,

> "I want to make it clear for the Appellate Court that the credibility was an issue in this case with respect to possession, and possession of notice and actual notice. The credibility of the defendants by this court is very, very lacking. The court does not believe the defendants' testimony in this case, whether they were aware of the notice and possession."

¶ 13 Al-Saadi filed a motion to reconsider on February 13, 2020. On May 21, 2020, the trial court entered an order denying the defendant's motion to reconsider and granting possession to the plaintiffs. The case was continued to June 25, 2020, for status on the eviction and for a hearing regarding the amount owed for use and occupancy. The case was then continued several times due to the COVID-19 pandemic.

¶ 14 On January 12, 2021, plaintiffs filed a motion to increase the judgment amount for use and occupancy. The motion stated that defendants had returned possession of the property to plaintiffs on July 10, 2020, and sought an additional judgment for use and occupancy through to that date. On April 1, 2021, the trial court entered a judgment of $14,645 against defendants in favor of plaintiffs.

¶ 15 On May 3, 2021, Al-Saadi filed a motion to reconsider the April 1, 2021, order. The trial court denied the order on September 16, 2021. Al-Saadi timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17 Al-Saadi raises the following arguments on appeal. First, the trial court erred in entering an order of possession against Al-Saadi as the pre-lawsuit notice and demand were not served in accordance with section 9-104 of the Forcible Entry and Detainer Act (735 ILCS 5/9-104 (West 2018)). Second, Al-Saadi argues that the trial court erred in awarding defendants use and

occupancy for the period of time after the order of possession was entered, and in entering duplicative judgments for the period of time from December 2019 through January 15, 2020.

¶ 18                    A. Al-Saadi's Argument Regarding the Order of Possession is Moot

¶ 19    As an initial matter, plaintiffs argue that Al-Saadi's argument regarding the order of possession is moot, as defendants relinquished possession of the property on July 10, 2020. "An appeal is moot if no actual controversy exists or when events have occurred that make it impossible for the reviewing court to render effectual relief." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. In support plaintiffs cite *Poulos v. Reda*, 165 Ill. App. 3d 793, 798 (1987), in which the tenants appealed a judgment awarding their landlord possession and damages for unpaid rent, but the lease term expired prior to the appellate decision. The appellate court ruled that the tenants' claim that they were entitled to a jury trial as to the issue of possession was moot as they could not be restored to possession under the expired lease. *Id.*

¶ 20    There are three recognized exceptions to the mootness doctrine, (1) the public interest exception, (2) the capable of repetition yet avoiding review exception, and (3) the collateral consequences exception. *In re Alfred H.H.*, 233 Ill. 2d 345, 355-63 (2009). Al-Saadi maintains that the public interest exception applies. "Application of this exception, which is narrowly construed, requires a clear showing of each of the following criteria: (1) the question presented is of a public nature; (2) an authoritative determination of the question is desirable for the future guidance of public officers; and (3) the question is likely to recur." *In re Shelby R.*, 2013 IL 114994, ¶ 16. In support of her position Al-Saadi merely argues that there are a large number of eviction cases and that guidance is needed regarding the issues presented on appeal. This is insufficient to satisfy the narrow requirements of the public interest exception. Further, the facts of this case are fairly unusual and do not present an issue of public nature or one which is likely to recur.

¶ 21   Accordingly, the public interest exception does not apply, and because defendants voluntarily relinquished possession of the property, issues stemming from the trial court's judgment of possession are moot.

¶ 22        B. Use and Occupancy may be Awarded After an Order of Possession

¶ 23   Regarding the issue of use and occupancy, Al-Saadi argues in part that the Forcible Entry and Detainer Act precludes recovery for use and occupancy after the trial court has entered a judgment of possession, and therefore the trial court erred in entering a judgment for use and occupancy after the resolution of plaintiffs' possession claim.

¶ 24   This matter involves an issue of statutory construction. The primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Ryan v. Board of Trustees of the General Assembly Retirement System*, 236 Ill. 2d 315, 319 (2010). The best indication of the legislature's intent is the plain language of the statute itself. *Id.* In determining the plain meaning of statutory language, the court looks to the statute as a whole, the subject it addresses, and the apparent intent of the legislature. *People v. Perry*, 224 Ill. 2d 312, 323 (2007). Where the statutory language is clear and unambiguous, it must be applied without resorting to additional tools of statutory interpretation. *Benzakry v. Patel*, 2017 IL App (3d) 160162, ¶ 74. The construction of a statute is a question of law and is reviewed *de novo*. *Sperl v. Henry*, 2018 IL 123132, ¶ 23.

¶ 25   Al-Saadi maintains that the Forcible Entry and Detainer Act provides a special statutory proceeding in derogation of the common law, and therefore must be strictly construed. Al-Saadi argues that the Forcible Entry and Detainer Act does not allow a party to recover use and occupancy after the resolution of a claim for possession, but only for the period pending the resolution of the possession claim.

¶ 26    We agree that the use and occupancy provisions of the Forcible Entry and Detainer Act (735 ILCS 5/9-201 (West 2018)) are in derogation of the common law and those provisions should be strictly construed. *Eddy v. Kerr*, 96 Ill. App. 3d 680, 682 (1981) (Forcible Entry and Detainer Act is in derogation of common law and is strictly construed); see 735 ILCS 5/9-201 (West 2018) (owner of land may sue for use and occupancy "[w]hen lands are held and occupied by any person without any special agreement for rent."); *Bailey v. Campbell*, 2 Ill. 110, 112 (1833) ("In order to maintain an action at common law for use and occupation, it is necessary to prove either that the defendant entered the premises by permission of the plaintiff, or that the actual relation of landlord and tenant existed."); *Jackson v. Reeter*, 201 Ill. App. 29, 31 (1915) ("At the common law, rents or compensation for use and occupation could not be recovered except where the relation of landlord and tenant was shown to exist."). However, nothing in the language of section 9-201 places any limitation on when a property owner may recover use and occupancy in relation to the entry of a judgment of possession. In fact, the relevant portion of the Act reads, "The owner of lands, his or her executors or administrators, may sue for and recover rent therefor, or a fair and reasonable satisfaction for the use and occupation thereof, by a civil action in any of the following instances: *** 2. When lands are held and occupied by any person without any special agreement for rent." 735 ILCS 5/9-201 (West 2018).

¶ 27    Al-Saadi argues that the Forcible Entry and Detainer Act "only permits a party to recover use and occupancy charges only 'pending resolution of the possession claim.' " (quoting *Circle Management., LLC v. Olivier*, 378 Ill. App. 3d 601, 608 (2007)). We disagree. First, *Circle Management* addressed the issue of whether an award of possession was an appropriate sanction for the defendant's failure to make court ordered use and occupancy payments, not whether use and occupancy could be awarded after a judgment for possession had been entered. *Id.* at 608, 614.

Second, Al-Saddi takes the quoted language out of context, with the complete sentencing reading, "Although not acknowledged by either party, section 9-201 of the Act permits a party who brings a forcible entry and detainer action to recover use and occupancy charges pending resolution of the possession claim." *Id.* at 608. This language does not require that a landowner is entitled to use and occupancy *only* during the pendency of a possession claim. Al-Saadi also cites *Fremont Square, LLC v. Athleta, LLC*, 2021 WL 5034829, at *2 (N.D. Ill. Feb. 16, 2021), to no avail since it merely echoes the language from *Circle Management*.

¶ 28    The fact is there is nothing in section 9-201 which limits recovery for use and occupancy to only the time period before a judgment for possession has been entered. Nor are we at liberty to depart from the plain language and meaning of the statute by reading into it "exceptions, limitations or conditions that the legislature did not express." *Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002). Furthermore, nothing about the statute indicates that a claim for use and occupancy must be accompanied by a claim for possession, although a demand for possession is sometimes required. See 735 ILCS 5/9-201(3-5) (West 2018); see also *Brown v. Veile*, 254 Ill. App. 3d 575, 576-77 (1993) (owners of a mobile home park brought a counterclaim for use and occupancy after purchasers of a mobile home had vacated their lot).

¶ 29    Al-Saadi contends that allowing claims for use and occupancy after a judgment of possession has been entered would lead to litigants bringing claims for the period between the entry of the judgment of possession and the date on which the occupants actually moved out. She maintains that this could lead to jurisdictional questions and new disputes as to when the occupants actually vacated the property, which "might open a potential floodgate of new litigation." We do not find these arguments compelling. The law already allows for recovery in such instances, and we are not creating a new avenue of recovery or opening the doors to new litigation.

¶ 30    Accordingly, the trial court did not err in awarding use and occupancy for the period of January 16, 2019, to July 10, 2020.

¶ 31                    C. The Trial Court did not Award Duplicative Damages

¶ 32    Lastly, Al-Saadi argues that the trial court erred in entering duplicative judgments for use and occupancy for the December 2019 to January 15, 2020, period. "The determination of damages is a question reserved to the trier of fact ***." *Richardson v. Chapman*, 175 Ill. 2d 98, 113 (1997). Accordingly, a trial court's determination as to the amount of damages will be reversed only if it is against the manifest weight of the evidence. See *People v. Richardson*, 234 Ill. 2d 233, 251 (2009) (findings of fact will be reversed only if they are against the manifest weight of the evidence.)

¶ 33    A review of the facts here clearly evinces that this is simply not what the trial court did. The December 4, 2019, order awarded use and occupancy in the amount of $2000 per month commencing in December 2019 and ordered that the sum total of $3000 would be due on January 15, 2020, which was the date of the trial. Thus, the January 15, 2020, order of $3000 reflected what defendants' owed plaintiffs for use and occupancy up to that date, as they had not paid the previously ordered use and occupancy. In contrast, the April 1, 2021, order merely increased the use and occupancy from $3000 to $14,645 to reflect the fact defendants continued to occupy the property through July 10, 2020. As such, no duplicative damages were awarded, instead only a total judgment of $14,645 was awarded. Therefore, the trial court did not err in entering the $14,645 judgment.

¶ 34                                III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of the Du Page County.

¶ 36    Affirmed.